Kaye, J.
(dissenting). In my view, plaintiff has made a sufficient factual showing of continuous treatment by her gynecologist — who treated her throughout more than 12 years —to avoid dismissal of her complaint as a matter of law on Statute of Limitations grounds. I would reverse the Appellate Division order and reinstate Supreme Court’s holding that there is an issue of fact as to defendant doctor’s continuous treatment of the plaintiff.
Plaintiff first consulted defendant in September 1974. When, during plaintiff’s regularly scheduled visit in July 1979, defendant diagnosed fibrocystic disease in plaintiff’s right breast, he told her that "we will have to keep an eye on it.”
Defendant saw plaintiff regularly over the next several years, including consultation for a "bump” near her left breast and a hysterectomy which he performed in April 1982; examination at that time revealed a cyst on her right breast and masses in each breast. After defendant performed the hysterectomy, he prescribed hormone replacements, including estrogen, for plaintiff at least through June 1985, the date he last approved refills of her prescriptions. Then, in defendant’s own words, "On January 13, 1986, the plaintiff came to my office for a gynecological check-up. Upon examining the plaintiff, I detected a mass in her right breast. In accordance with proper medical practices, I immediately consulted with Dr. Frederick Lane, an oncologist surgeon at Albany Medical Center Hospital. Dr. Lane saw the plaintiff that same day and performed a biopsy which showed the right breast to be cancerous. Dr. Lane subsequently performed a mastectomy on the plaintiff.”
On these allegations, there is at least an issue of fact as to the timeliness of plaintiff’s suit commenced in December 1987, less than two years after the diagnosis of breast cancer and well within the Statute of Limitations.
Plaintiff has alleged that her gynecologist diagnosed a breast disease that he apparently felt at the time could be treated by close monitoring (unlike his later reference to an oncologist surgeon). According to plaintiff, defendant assured her that he would "keep an eye on [her disease],” thus "lulling *261 [her] into a false sense of security by an apparent lack of concern about her breast mass.” Despite his awareness of breast lumps or masses in 1979, 1980 and 1982, he at no time recommended any further testing, evaluation or consultation during her periodic contacts with him. Clearly, these acts of alleged negligence, combined with wrongful omissions, may constitute a continuous course of treatment, separate and apart from any treatment for endometriosis (see, Borgia v City of New York, 12 NY2d 151, 155).
Indeed, the majority’s pivotal assumption throughout its writing that plaintiff was being treated by her gynecologist solely for the separate condition of endometriosis ignores the evidence of additional gynecological treatment — for example, defendant’s diagnosis of breast disease, his assertion that he would monitor the disease, the later consultation for a breast lump, and the hysterectomy (the hospital admission examination revealing "bilateral mobile masses in the upper quadrant of each breast”).
"[W]here the physician and patient reasonably intend the patient’s uninterrupted reliance upon the physician’s observation, directions, concern, and responsibility for overseeing the patient’s progress,” the requirements of the continuous treatment doctrine are satisfied (Richardson v Orentreich, 64 NY2d 896, 898). Plaintiff’s allegations of additional malpractice regarding the estrogen — failure to use caution in prescribing estrogen given her history and fibrocystic breast disease, and prescribing estrogen to plaintiff for more than a year without a baseline mammogram or physical examination — bring the last date of treatment well within the Statute of Limitations.
I agree wholeheartedly with the majority that one of the policy grounds underlying the continuous treatment doctrine is that a patient should not have to choose between continuing an ongoing course of treatment and bringing suit for malpractice — a policy fully applicable to the present case. The course of treatment continued over a period of years, during which time plaintiff claims she relied upon her physician to monitor her condition of fibrocystic breast disease and during which time she developed breast cancer. The continuous treatment doctrine, properly applied, should relieve plaintiff of the burden of challenging her doctor’s expertise during this time.
On this record, I would not deny the plaintiff her day in court.
*262 Judges Simons, Alexander, Titone and Bellacosa concur with Chief Judge Wachtler; Judge Kaye dissents and votes to reverse in a separate opinion in which Judge Hancock, Jr., concurs.
Order affirmed, with costs.