# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**281**

**CA 15-00398**

PRESENT: WHALEN, P.J., CENTRA, CARNI, DEJOSEPH, AND TROUTMAN, JJ.

---

DARLENE M. LOHNAS, PLAINTIFF-RESPONDENT,

                V                          MEMORANDUM AND ORDER

FRANK A. LUZI, JR., M.D. AND NORTHTOWNS
ORTHOPEDICS, P.C., DEFENDANTS-APPELLANTS.
(APPEAL NO. 2.)

---

THE TARANTINO LAW FIRM, LLP, ROCHESTER (TAMSIN J. HAGER OF COUNSEL),
FOR DEFENDANTS-APPELLANTS.

BRIAN P. FITZGERALD, P.C., BUFFALO (BRIAN P. FITZGERALD OF COUNSEL),
FOR PLAINTIFF-RESPONDENT.

---

Appeal from an order of the Supreme Court, Erie County (Patrick H. NeMoyer, J.), entered February 4, 2015. The order granted defendants' motion for leave to reargue and, upon reargument, denied defendants' motion for partial summary judgment.

It is hereby ORDERED that the order so appealed from is modified on the law by granting the motion for partial summary judgment in part and dismissing the complaint to the extent that the complaint, as amplified by the bill of particulars, asserts that defendants are equitably estopped from asserting as a defense the statute of limitations for medical malpractice, and as modified the order is affirmed without costs.

Memorandum: Plaintiff commenced this medical malpractice action on September 30, 2008, seeking damages for injuries allegedly sustained as the result of the negligent care and treatment by Frank A. Luzi, Jr., M.D. (defendant) throughout the course of the parties' seven-year doctor-patient relationship. Defendants moved for partial summary judgment dismissing as time-barred the claims arising out of defendant's treatment of plaintiff's shoulder prior to March 30, 2006, contending that the doctrines of continuous treatment and equitable estoppel are not applicable to the facts herein. Supreme Court denied the motion, determining that there are triable issues of fact "whether the statute of limitations might have been tolled by [plaintiff's] continuous course of treatment with defendant" and "whether the equitable estoppel doctrine applies to toll the statute of limitations."

The court properly determined that there are issues of fact with respect to the continuous treatment doctrine. Defendants met their

initial burden of establishing that more than 2½ years elapsed between the dates of the alleged malpractice underlying the claims prior to March 30, 2006 and the commencement of the action (see *Simons v Bassett Health Care*, 73 AD3d 1252, 1254).  Plaintiff, however, submitted proof raising triable issues of fact.  Although the record contains evidence of a gap in treatment that exceeds the 2½-year period of limitations, we conclude that there are issues of fact whether plaintiff and defendant "reasonably intend[ed] [plaintiff's] uninterrupted reliance upon [defendant's] observation, directions, concern, and responsibility for overseeing [plaintiff's] progress" (*Shumway v DeLaus*, 152 AD2d 951, 951, *lv dismissed* 75 NY2d 946; *see Devadas v Niksarli*, 120 AD3d 1000, 1005-1006; *Gomez v Katz*, 61 AD3d 108, 116-117; *Neureuther v Calabrese*, 195 AD2d 1035, 1036; *Edmonds v Getchonis*, 150 AD2d 879, 881).

We respectfully disagree with our dissenting colleague's view that "because the parties only contemplated treatment after September 5, 2003 on an 'as needed basis,' the continuous treatment doctrine does not apply."  The determination whether continuous treatment exists "must focus on the patient" (*Rizk v Cohen*, 73 NY2d 98, 104) and, "[i]n determining whether plaintiff[] raised an issue of fact concerning the applicability of the continuous treatment doctrine, [her] version of the facts must be accepted as true" (*Scribner v Harvey*, 245 AD2d 1120, 1121).  Based on plaintiff's version of the facts, there is support in the record for a finding that plaintiff "intended uninterrupted reliance" upon defendant's observation, directions, concern, and responsibility for overseeing her progress.  Notably, during approximately 7 years of treatment with defendant, plaintiff underwent two surgeries, saw no other physician regarding her shoulder, and returned to him for further treatment, i.e., a potential third surgery, but was told that he did not treat or operate on shoulders anymore.  Defendant referred plaintiff to another physician in his practice, and plaintiff went to that appointment, but was told that the second physician would not treat her.  Furthermore, the fact that plaintiff left the September 5, 2003 appointment with a direction to see defendant "as needed" is not dispositive inasmuch as defendant conceded that "[o]bviously [plaintiff's] problem is long standing and chronic.  She most likely will need further surgery in the future due to her young age and need for revision shoulder replacement vs fusions."  While plaintiff's subsequent visit to defendant on April 28, 2006 "might not have been scheduled at the conclusion of the visit on [September 5, 2003], we recognize that, as a practical matter, it is not always possible to know at the conclusion of one visit with a physician whether a further visit with the physician may become indicated for the same condition within a reasonable time thereafter" (*Gomez*, 61 AD3d at 114; *see Edmonds*, 150 AD2d at 881).  Although plaintiff certainly admitted to being discouraged with defendant after the September 5, 2003 visit, we cannot conclude that such discouragement renders the continuous treatment doctrine inapplicable as a matter of law (*see Edmonds*, 150 AD2d at 880-881).

We further conclude, however, that the court erred in determining that plaintiff raised triable issues of fact whether defendants are

equitably estopped from asserting a statute of limitations defense. Plaintiff failed to submit any proof that she "was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (*Simcuski v Saeli*, 44 NY2d 442, 449; *see Calderaro v Lehman*, 178 AD2d 396, 397). "Thus, it cannot be said that defendants 'improperly lull[ed] . . . plaintiff into failing to bring h[er] claim' " (*Ashe v Niagara Frontier Transp. Auth.*, 294 AD2d 842, 843). We therefore modify the order accordingly.

All concur except CARNI, J., who dissents in part and votes to modify in accordance with the following memorandum: I respectfully dissent in part. I agree with my colleagues that defendants are entitled to summary judgment dismissing plaintiff's claim that defendants are equitably estopped from asserting a statute of limitations defense. However, I respectfully disagree with the conclusion that plaintiff raised issues of fact in response to defendants' prima facie entitlement to partial summary judgment with respect to plaintiff's assertion of a toll under the continuous treatment doctrine.

Following an office appointment with Frank A. Luzi, Jr., M.D. (defendant) on April 2, 2002, which concluded with defendant to "see [plaintiff] back on an as needed basis" with no scheduled follow-up appointment, plaintiff returned to defendant on September 5, 2003 to be seen as a result of being "pushed against the wall by one of her children." This was a patient-initiated appointment. At the conclusion of this appointment, defendant diagnosed plaintiff with a "left shoulder strain and a contusion . . . with no obvious evidence of loosening or fracture." Defendant "recommended continued exercises on her own and [plaintiff] was given samples of anti-inflammatory medication." Again, defendant noted that he would "see [plaintiff] on an as needed basis." Plaintiff did not see defendant again until April 28, 2006, which again was a patient-initiated appointment.

The undisputed facts further establish that between September 5, 2003 and April 28, 2006, a gap of more than 2½ years (*see* CPLR 214-a), plaintiff had no scheduled return appointments, sought no patient-initiated appointments, received no treatment of any kind from defendant, and no medications were prescribed or renewed by defendant on plaintiff's behalf. Plaintiff testified at her examination before trial that the reason for such a long time between these appointments was that she "had gotten discouraged with [defendant]. It was kind of learn to live with it, you're going to have problems, kind of deal with it type of thing. It was like why keep going back to him, he's going to keep telling me the same thing."

In my view, because the parties only contemplated treatment after September 5, 2003 on an "as needed basis," the continuous treatment doctrine does not apply (*see Williams-Gardner v Almeyda*, 50 AD3d 286, 286-287, *lv denied* 11 NY3d 708). No further treatment was "explicitly anticipated" after the September 5, 2003 appointment (*Richardson v Orentreich*, 64 NY2d 896, 898).

Moreover, inasmuch as plaintiff admitted that the more than 2½-

year gap in treatment was because she was discouraged with defendant and she did not expect any actual treatment if she returned, it cannot be said that there existed the "trust and confidence" that ordinarily marks the physician-patient relationship and "puts the patient at a disadvantage questioning the doctor's skill because to sue while undergoing treatment necessarily interrupts the course of treatment" (*Massie v Crawford*, 78 NY2d 516, 519, *rearg denied* 79 NY2d 978). Here, there simply was no course of treatment to interrupt during the more than 2½-year hiatus between appointments. "A patient is not entitled to the benefit of the toll in the absence of continuing efforts by a doctor to treat a particular condition because the policy reasons underlying the continuous treatment doctrine do not justify the patient's delay in bringing suit in such circumstances" (*id.* at 519). Here, plaintiff's testimony at her examination before trial established that for over 2½ years she neither believed nor expected that defendant was making, or would make, any continuing efforts to treat her shoulder problems. In my view, under these circumstances, the policy reasons underlying the continuous treatment doctrine are simply not implicated.

Therefore, I would modify the order by granting defendants' motion for partial summary judgment in its entirety, and dismissing the allegations in the complaint with respect to any medical malpractice occurring prior to March 30, 2006.

Entered:  June 17, 2016                        Frances E. Cafarell
                                               Clerk of the Court